IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MIA SEARLES, as administrator of the Estate of JALEN RANDLE, deceased, and TIFFANY RACHAL, WARREN RANDLE, and S.S., a minor, in their individual capacities as wrongful death beneficiaries of JALEN RANDLE, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF HOUSTON, TEXAS, TROY FINNER, SHANE PRIVETTE, and JOHN DOES NOS. 1-10,<br><br>Defendants. | Case No.:<br><br>Judge:<br><br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiffs Mia Searles, as administrator of the Estate of Jalen Randle, deceased, and Tiffany Rachal, Warren Randle, and S.S., a minor, in their individual capacities as wrongful death beneficiaries of Jalen Randle, deceased (together, "Plaintiffs"), by and through undersigned counsel, bring this Complaint against Defendants City of Houston, Texas, Chief of Police Troy Finner, Officer Shane Privette, and John Does Nos. 1-10 (collectively, "Defendants"), and make the following allegations upon personal knowledge as to Plaintiffs' own acts, upon information and belief, and Plaintiffs' attorneys' investigation as to all other matters, and states as follows:

### I.   INTRODUCTION

1. This action arises out of the tragic and senseless shooting death of Jalen Randle, a Black man, who was inexplicably and unnecessarily shot by Defendant Privette, an officer with the Houston Police Department ("HPD"), even though he posed no threat of harm to officers or others.

2. On April 27, 2022, in the City of Houston, Texas, HPD officers effectuated a stop of a vehicle in which Mr. Randle was a passenger.

3. After Mr. Randle's vehicle came to a stop, he opened the passenger door, got out of his vehicle, and attempted to flee.

4. At or around the same time, Defendant Privette exited his vehicle, shouted, "show me your hands," and immediately fired his weapon at Mr. Randle.

5. Without giving Mr. Randle a reasonable opportunity to comply with any command, Defendant Privette fatally shot Mr. Randle, while his back was turned to him, in the back of the neck.

6. Defendant Privette's use of lethal force on a person who posed no immediate threat of harm to officers or others constitutes an unreasonable use of force in violation of the Fourth Amendment of the United States Constitution.

7. Plaintiffs bring this action for survivorship and wrongful death damages, pursuant to 42 U.S.C. §§ 1983 and 1988, resulting from the deprivation of the decedent, Jalen Randle's, clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

## II.   PARTIES

**A. Plaintiffs**

8. At all times relevant herein, Plaintiff Mia Searles is the administrator of the Estate of Jalen Randle, deceased, and a resident of Houston, Texas.

9. At all times relevant herein, Plaintiff Tiffany Rachal is the mother of the decedent Jalen Randle and a resident of Cypress, Texas.

10. At all times relevant herein, Plaintiff Warren Randle is the father of the decedent

Jalen Randle and a resident of Houston, Texas.

11. At all times relevant herein, Plaintiff S.S., a minor, is the daughter of the decedent Jalen Randle and a resident of Spring, Texas.

12. Plaintiffs are the proper parties to bring claims on behalf of the Estate of Jalen Randle and the wrongful death beneficiaries of Jalen Randle.

**B. Defendants**

13. At all times relevant herein, Defendant Shane Privette was employed as an HPD police officer for Defendant City of Houston, Texas and acted under color of state law.

14. At all times relevant herein, Defendant Troy Finner ("Defendant Finner") was employed by Defendant City of Houston as the Chief of Police of HPD. Pursuant to Sec. 34-22 of Article II of the Code of Ordinances for the City of Houston, Defendant Finner is the executive officer and director of HPD and shall have management of the department, exercise the functions of the department, and carry out the provisions of law and ordinances with respect to such functions.

15. At all times relevant herein, Defendant(s) John Does Nos. 1-10, whose names and addresses are unknown despite the exercise of reasonable diligence, are believed to be police officers, supervisors, commanders, and/or other administrative, police department, or City employees of Defendant City of Houston whose identities or involvement in the events giving rise to the claims asserted herein cannot be ascertained and/or discovered by Plaintiffs at the present time, but whom, through conducting discovery, may become known as being persons properly included as Defendants in this matter.

16. At all times relevant herein, Defendant City of Houston, Texas (the "City") is a municipal corporation located in Harris County, Texas.

17. At all times relevant to this action, the City employed Defendants Finner, Privette,

3

and John Does Nos. 1-10.

18. HPD's mission statement is as follows: "Our mission is to enhance the quality of life in the city of Houston by working cooperatively with the public to prevent crime, enforce the law, preserve the peace, and provide a safe environment."[1]

19. HPD also makes five promises to the community of Houston, including:

   a. "Preserve and Advance Democratic Values. We shall uphold this country's democratic values as embodied in the Constitution and shall dedicate ourselves to the preservation of liberty and justice for all."

   b. "Improve the Quality of Community Life. We shall strive to improve the quality of community life through the provision of quality and equitable services."

   c. "Improve the Quality of Work Life. We shall strive to improve the quality of community life through the provision of quality and equitable services."

   d. "Demonstrate Professionalism. We shall always engage in behavior that is beyond ethical reproach and reflects the integrity of police professionals."

   e. "Principles. Life and individual freedoms are sacred. All persons should be treated fairly and equitably. The role of the police is to resolve problems through the enforcement of laws – not through the imposition of judgement or punishment. The neighborhood is the basic segment of the community. Because law enforcement and public safety reflect community wide concern, the police must actively seek the involvement of citizens in all aspects of policing. The fundamental responsibility of the police is provision of quality services. The department's employees are our most valuable asset. Employee involvement in

---

[1] http was ://www.houstontx.gov/police/mission.htm.

departmental activities is essential for maintaining a productive working environment. Employees should be treated fairly and equitably in recognition of basic human dignity and as a means of enriching their work life."[2]

20. At all times relevant hereto, Defendants violated HPD's mission statement and the promises they made to the community of Houston.

21. Redress is being sought from all Defendants in their official and/or individual capacities, and all Defendants were acting under and/or outside color of law and/or pursuant to the policies, customs, and/or usages of the City of Houston.

### III. JURISDICTION AND VENUE

22. This Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, as this action is brought, pursuant to 42 U.S.C. § 1983, to redress a deprivation of constitutional rights as set forth herein.

23. This Court has personal jurisdiction over Defendants and venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) because, upon information and belief, Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

### IV. STATEMENT OF FACTS

24. On April 27, 2022, Mr. Randle was a passenger in a vehicle operated by his childhood friend.

25. As the driver of Mr. Randle's vehicle drove down Berndale Street to the corner of Ledwicke Street and turned left onto Ledwicke Street, he and Mr. Randle were unaware that they were in the area of several unmarked police vehicles.

---

[2] *Id.*

26. While the driver was driving, unbeknownst to him or Mr. Randle, unmarked police vehicles were driving on the neighboring streets.

27. The driver continued to drive his car at the speed limit and obey all traffic laws.

28. As the driver drove down Wiggins Street and approached the corner of Laurentide Street, a marked HPD car turned onto Wiggins Street from Ledwicke Street with its signal lights on.

29. At the same time, Defendant Privette was in an unmarked HPD cruiser that was also in the area.

30. The driver turned right onto Laurentide Street and continued to drive down Laurentide Street as it turned into Josie Street.

31. As the driver turned right onto Josie Street, an HPD cruiser slammed into the rear of the vehicle occupied by Mr. Randle.

32. Scared and confused, the driver continued to drive the car towards a relative's home located on Josie Street.

33. As the driver continued to drive his vehicle down Josie Street, the HPD cruiser accelerated and again slammed into the rear of the vehicle occupied by Mr. Randle, executing a PIT maneuver and causing the car to turn 180 degrees and come to a stop.

34. At or around the same time, Defendant Privette's unmarked vehicle pulled directly in front of the vehicle occupied by Mr. Randle.

35. Defendant Privette did not observe anything unusual or dangerous about the vehicle, its driver, or Mr. Randle.

36. At or around the same time, numerous other marked and unmarked HPD vehicles pulled up to the vehicle occupied by Mr. Randle and surrounded it.

37. At or around the same time, Mr. Randle opened the passenger door of the car, got out

of the car, and attempted to flee with his back toward Defendant Privette.

38. Mr. Randle did not brandish a weapon, reach for a weapon, make any violent gestures, threaten anyone, or take any other actions that could be reasonably perceived as endangering officers or others.

39. Neither Defendant Privette nor any other HPD officers observed Mr. Randle or the driver of the vehicle brandish a weapon, reach for a weapon, make any violent gestures, threaten anyone, or otherwise take any actions that could reasonably be perceived as endangering officers or others.

40. Despite not observing any conduct that could reasonably be perceived as endangering officers or others, Defendant Privette stepped out of the vehicle with his gun drawn and pointed it at Mr. Randle.

41. As Mr. Randle attempted to flee, Defendant Privette yelled, "show me your hands!"

42. Contemporaneously with his command, without giving Mr. Randle any opportunity to comply, Defendant Privette immediately shot Mr. Randle in the back of the neck, causing him to collapse to the ground.

43. Immediately after shooting Mr. Randle, Defendant Privette exclaimed, "oh shit!"

44. An unknown officer then ran up to Mr. Randle's lifeless body and handcuffed him.

45. Another unknown officer grabbed Mr. Randle by his shirt and dragged him onto the sidewalk.

46. Mr. Randle laid bleeding on the sidewalk for several minutes before receiving any medical treatment.

47. Mr. Randle was subsequently transported to the hospital where he was pronounced dead.

48. Defendant Privette has a known history within HPD of using unnecessary and excessive force against members of the Houston community.

49. On June 26, 2019, a grand jury indicted Defendant Privette for first-degree felony assault in connection with an arrest he made in November 2017.

## CLAIMS ALLEGED

### COUNT I

**42 U.S.C. § 1983 – Excessive Force**
**(Against Defendant Privette)**

50. All preceding paragraphs are incorporated as if fully re-written herein.

51. This claim is brought pursuant to Title 42 U.S.C. § 1983.

52. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.…"

53. The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

54. For decades, the United States Supreme Court has interpreted the Fourth Amendment to the United States Constitution to prohibit a police officer's use of excessive force during the arrest of a fleeing citizen that does not pose an immediate threat to officers or others. *See,* e.g., *Tennessee v. Garner*, 471 U.S. 1, 2 (1985).

55. At all times relevant to this matter, Defendant Privette was clothed with the authority of the state and misused that authority.

56. While acting under color of state law, Defendant Privette deprived the decedent, Jalen Randle, of his well-established right to be free from excessive force, per the authority cited herein.

57. At all times relevant to this action, the decedent had the well-established constitutional right not to be subjected to excessive force while being arrested, even if his arrest could have otherwise been proper.

58. In other words, on April 27, 2022, Defendant Privette was only permitted to use the amount of force necessary under the circumstances to arrest the decedent.

59. Defendant Privette used excessive force when he arrested and/or seized the person of decedent by shooting him in the back of the neck and killing him when decedent posed no immediate threat of harm to officers or others.

60. As a direct and proximate result of Defendant Privette's actions, the decedent experienced extreme pain and suffering, financial loss, and, ultimately, death for which Plaintiff Mia Searles, as the administrator of the Estate of Jalen Randle, seeks compensation.

61. As a direct and proximate result of Defendant Privette's actions, Plaintiffs Tiffany Rachal, Warren Randle, and S.S., as wrongful death beneficiaries of the decedent, have been damaged, including, but not limited to, experiencing loss of support of the decedent, loss of companionship of the decedent, mental anguish, and emotional agony.

## COUNT II

**Supervisory Liability**
**(Against Defendants Finner and John Does Nos. 1-10)**

62. All preceding paragraphs are incorporated as if fully re-written herein.

63. This claim is brought pursuant to Title 42 U.S.C. § 1983.

64. Defendants Finner and/or John Does Nos. 1-10 are/were supervisors of Defendant Privette.

65. At all times relevant to this action, Defendants Finner and/or John Does Nos. 1-10 knew or reasonably should have known, and/or participated in, and/or condoned, and/or ratified Defendant Privette's use of lethal force against the decedent when the decedent posed no immediate risk of harm to any officer or civilian.

66. Defendants Finner and/or John Does Nos. 1-10 knew or reasonably should have known that their acts and/or failures to act would likely cause the constitutional injury that befell Plaintiffs and the decedent because they:

   a. endorsed, promoted, encouraged, and/or failed to discipline Defendant Privette's actions;

   b. kept Defendant Privette employed at the City and allowed him to continue to use his firearms as a police officer despite prior instances of excessive force and having reason to know he was unfit to do so; and

   c. failed to train Defendant Privette on the appropriate use of force, discipline Defendant Privette for prior instances of excessive force, or otherwise prevent Defendant Privette from engaging in the above-stated conduct.

67. As a result of their failures and abandonment of their supervisory duties, as stated above, Defendants Finner and/or John Does Nos. 1-10 created an environment that condoned the aforementioned conduct and perpetuated and/or facilitated and/or aided Defendant Privette in the unreasonably violent seizure of the decedent's person and the taking of his life when he posed no threat to Defendants or anyone else at the time he was killed.

68. Defendants Finner and/or John Does Nos. 1-10 engaged in acts and omissions that were the product of a reckless or callous indifference to the decedent's constitutional rights, including training, endorsing, and/or condoning Defendant Privette's shooting at subjects in the

manner detailed above, i.e., when the subject had no weapons nor posed any threat to him or others.

69. By their acts and failures to act as stated above, Defendants Finner and/or John Does Nos. 1-10 in fact caused the deprivation of the decedent's constitutional rights, including violations of the Fourth and Fourteenth Amendments to the United States Constitution.

70. As a direct and proximate result of Defendants Finner's and/or John Does Nos. 1-10's actions and inactions, the decedent experienced extreme pain and suffering, financial loss, and, ultimately, death for which Plaintiff Mia Searles, as the administrator of the Estate of Jalen Randle, seeks compensation.

71. As a direct and proximate result of Defendants Finner's and/or John Does Nos. 1-10's actions and inactions, Plaintiffs Tiffany Rachal, Warren Randle, and S.S., as wrongful death beneficiaries of the decedent, have been damaged, including, but not limited to, experiencing loss of support of the decedent, loss of companionship of the decedent, mental anguish, and emotional agony.

### COUNT III

**Municipal Liability pursuant to *Monell*
(Against Defendant City of Houston)**

72. All preceding paragraphs are incorporated as if fully re-written herein.

73. This claim is brought pursuant to 42 U.S.C. § 1983.

74. Municipal bodies, like Defendant City of Houston, are liable for constitutional violations under 42 U.S.C. § 1983 when execution of their official policies or customs deprives an individual of rights protected by the Constitution. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

75. Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized

by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (e) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

76. A municipality is liable under § 1983 when its agency's policy or custom, as evidenced in any of the manners set forth above, is "closely related" to the ultimate constitutional injury suffered by the plaintiff, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

77. Defendants Finner and/or John Does Nos. 1-10 are the top policymakers for the City of Houston Police Department.

78. Defendant City maintains an armed police force, the Houston Police Department, with the power to arrest citizens.

79. Defendant City is also ultimately responsible for the assignment of personnel for training and disciplinary purposes.

80. Defendant City of Houston is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment, which disproportionately involves African Americans, like the decedent.

81. In 2023, even though only about 25% of the City's residents are Black, they made up 61% of those seriously injured by police. Specifically, of approximately 4,555 reported uses of force against people in 2023, approximately 55% were committed against Black residents, with 39

12

incidents, or 61% involving serious bodily injury.[3]

82. In 2022, approximately 72% of those who suffered serious bodily injury at the hands of HPD officers were Black. And, since 2020, 63% of those who have died at the hands of HPD officers were Black, according to the City's own data.[4]

83. HPD also has a deep-seeded history and custom of condoning and failing to discipline officers for excessive force. From approximately 2007-2012, Houston civilians reported HPD officers for excessive use of force 588 times. The Internal Affairs division investigated each complaint and dismissed all but four. Even when HPD officers reported other HPD officers for excessive force on 118 occasions, the Internal Affairs division dismissed all but 11 cases.[5]

84. Between 2007 and 2012, HPD officers were involved in 550 incidents in which either a citizen or animal was injured or killed by a police shooting. Internal Affairs investigated each incident and determined that every single shooting was justified.[6]

85. During the same time period, out of 706 complaints about excessive force, HPD disciplined only 15 officers and for the 550 shootings committed by HPD officers, HPD disciplined none.[7]

86. This pattern and practice with respect to the use of excessive force and the failure of HPD to discipline officers for the use of that force is part of a larger pattern of excessive force and deadly force that has been pervasive within HPD in recent years and under Defendant Finner's supervision.

87. The result is an unwritten policy or custom within HPD of "shoot first and ask

---

[3] Houston police injured Black residents the most in 2023, records show (houstonchronicle.com).

[4] *Id.*

[5] The Horror Every Day: Police Brutality In Houston Goes Unpunished - The Texas Observer

[6] *Id.*

[7] *Id.*

13

questions later," in situations where, as here, a citizen is fleeing from an arrest.

88. The "shoot first" policy or custom is known to Defendant Finner and/or John Does Nos. 1-10 and they have approved, ratified, encouraged, sanctioned, and/or promoted this policy or custom throughout HPD.

89. Following the death of the decedent, Defendant Finner and/or John Does Nos. 1-10 continue to approve, ratify, encourage, sanction, and/or promote the "shoot first" policy or custom as they expressed support for Defendant Privette's actions regarding the death of the decedent, imposed no discipline on Defendant Privette, and changed none of the officer training at HPD.

90. Defendant City of Houston also maintains an unwritten policy or custom of allowing officers to shoot in the direction of citizens when the officer is not facing an actual threat of death or serious physical harm and/or the officer knows or has reason to believe the person is not trying to shoot, injure, or harm any other person.

91. The aforesaid unwritten policy or custom put the decedent at unreasonable risk of grievous bodily harm, injury, or death.

92. The aforesaid unwritten policy or custom did in fact cause the death of the decedent.

93. At all times relevant hereto, Defendants Finner and/or John Does Nos. 1-10 initiated, authorized, condoned, ratified, and/or encouraged the aforesaid unwritten policies or customs, as they were on actual and/or constructive notice of these policies or customs but did nothing to change them.

94. Defendant City of Houston is also liable under *Monell* because the department's training, decision-making, and policy-making with respect to using force, including the use of firearms and training officers about their use, is so inadequate that it shows HPD's deliberate indifference to the constitutional rights of citizens.

95. Under *City of Canton v. Harris*, liability may attach to a municipality if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

96. The above-mentioned circumstances show "the need for more or different training," as the Supreme Court put it in *City of Canton v. Harris*.

97. HPD's toleration of and failure to discipline officers who engage in excessive force, even when their force results in the criminal indictment of officers or the City paying monetary civil rights settlements is evidence that Plaintiffs' injuries are traceable to the City's custom of permitting excessive force, and it is evidence that the City has acted with deliberate indifference in failing to supervise its officers. *See, e.g.*, *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (stating that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law").

98. In accordance with HPD's custom and practice in failing to adequately train its officers on the appropriate use of force and to discipline them for excessive uses of force, upon information and belief, Defendant Privette was not disciplined by HPD after he was indicted for an aggravated assault in 2017 that left a Houston resident with a broken eye socket and severe bruises to his face.

99. Rather, Defendant Privette was permitted to continue to serve as an HPD officer without any discipline or further training which directly resulted in his unjustified, lethal use of force against the decedent, Jalen Randle.

100. HPD's failure to adequately train its officers, including Defendant Privette, concerning the appropriate use of force and to discipline them for their prior instances of excessive force directly and proximately caused the violation of the decedent's Fourth and Fourteenth Amendment rights and, ultimately, his death.

101. As a direct and proximate result of Defendant City of Houston's policies and unwritten customs as set forth above, the decedent experienced extreme pain and suffering, financial loss, and, ultimately, death for which Plaintiff Mia Searles, as the administrator of the Estate of Jalen Randle, seeks compensation.

102. As a direct and proximate result of Defendant City of Houston's policies and unwritten customs as set forth above, Plaintiffs Tiffany Rachal, Warren Randle, and S.S., as wrongful death beneficiaries of decedent, have been damaged, including, but not limited to, experiencing loss of support of the decedent, loss of companionship of the decedent, mental anguish, and emotional agony.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, jointly and severally, for not less than $75,000.00, including but not limited to:

A. Compensatory and consequential damages for the Estate of Jalen Randle and the wrongful death beneficiaries in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B. Punitive damages against Defendants Privette, Finner, and John Does Nos. 1-10 in their individual capacities in an amount to be determined at trial, for their willful, reckless, and malicious conduct;

C. Equitable relief, including, without limitation, that Defendant City of Houston be

made to adopt appropriate policies to prevent future instances of the type of misconduct described herein;

  D. Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

  E. Any and all other relief that this Court deems equitable, just, and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of the within matter.

            Respectfully submitted,

            **THE COCHRAN FIRM – DALLAS, PLLC**

            _/s/ Larry F. Taylor_
            Larry F. Taylor
            State Bar No. 24071156
            ltaylor@cochrantexas.com
            1825 Market Center Blvd., Suite 500
            Dallas, Texas 75207
            (214) 651-4260
            For E-Service please include
            twickstrom@cochrantexas.com

            Benjamin Crump*
            Aaron Deckle
            **BEN CRUMP LAW, PLLC**
            122 South Calhoun Street
            Tallahassee, Florida 32301
            (800) 691-7111
            ben@bencrump.com
            aaron@bencrump.com

            Diandra S. Debrosse Zimmermann*
            Eli Hare*
            **DiCELLO LEVITT LLP**
            505 20th Street North, 15th Floor
            Birmingham, Alabama 35203
            (205) 855-5700

Fu@dicellolevitt.com
ehare.@dicellolevitt.com

Robert F. DiCello*
Kenneth P. Abbarno*
Jordyn Parks*
**DiCELLO LEVITT LLP**
8160 Norton Parkway, 3rd Floor
Mentor, Ohio 44060
rfdicello@dicellolevitt.com
kabbarno@dicellolevitt.com
jparks@dicellolevitt.com

*Counsel for Plaintiffs*

* *Pro hac vice* applications forthcoming